UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN FURUKAWA, INC.,
a Delaware Corporation

Plaintiff,

v.

ISTHIHAR HOSSAIN, an Individual and
Michigan resident, and HT WIRE & CABLE
AMERICAS, LLC, a Michigan limited liability
company,

Defendants.

_____/

Case No. 14-cv-13633

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MICHAEL J. HLUCHANIUK

**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION [103]**

**I. INTRODUCTION**

American Furukawa, Inc., ("American Furukawa" or "Plaintiff"), commenced the instant action against Isthihar Hossain on September 19, 2014. *See* Dkt. 1. On September 16, 2015, the Plaintiff filed an Amended Complaint adding HT Wire & Cable Americas, LLC ("HT Wire") as a Defendant. *See* Dkt. No. 65. On October 5, 2015, the Defendants Moved to Dismiss and Defer the action to arbitration. *See* Dkt. No. 79. The Court denied the Defendants' Motion on November 19, 2015. *See* Dkt. No. 97.

Presently before the Court is Defendants' Motion for Reconsideration. *See* Dkt. No. 103. For the reasons discussed below, the Court will **DENY** the Defendants' Motion.

**II. BACKGROUND**

Plaintiff, American Furukawa, is an American company owned by Furukawa Electric Co., Ltd. ("Furukawa Electric Group"). Dkt. No. 89 at 6 (Pg. ID No. 1697). Furukawa Electric

-1-

Group has several other subsidiaries, including Furukawa Electrical Industrial Cable Co. Ltd ("FEIC") and Shenyang Furukawa Cable Co. Ltd. ("SFC"). *Id.* American Furukawa, FEIC, and SFC are all different companies with different management teams, directors and customers. *Id.* (Exhibit 1, ¶¶ 5–8). Defendant Hossain is a former employee of American Furukawa, and is the resident agent of a competing company, Defendant HT Wire & Cable Americas, LLC ("HT Wire"). *Id.* at 6.

FEIC and SFC entered into a Joint Venture Agreement with Hebei Huatong and Cables Group Co. Ltd. ("Huatong") on July 16, 2010. *Id.* at 7 (Pg. ID No. 1698). The Joint Venture Agreement contains an arbitration clause. *Id.* Neither the Plaintiff nor the Defendants were signatories to the agreement. *Id.*

American Furukawa filed this lawsuit against Hossain for the alleged misappropriation of trade secrets, and other related claims, including violation of the Computer Fraud and Abuse Act, in September of 2014. *Id.* at 8 (Pg. ID No. 1699).

After a about year of litigation, the Plaintiff added Defendant HT Wire. In September of 2015, Defendants moved for deferral to arbitration. *See* Dkt. No. 79. The Defendants argued that the action was subject to the arbitration clause of the Joint Venture Agreement between Huatong, FEIC and SFC. This Court held that the Defendants waived that argument by conducting litigation for the past year. *See* Dkt. No. 97. Defendants have now moved for reconsideration.

### III. LEGAL STANDARD

Under this Court's Local Rules, the Court may not grant a motion for reconsideration which merely presents the same issues that the Court already ruled on. LR 7.1(h)(3)(E.D. Mich. July 1, 2013). Additionally, the movant must demonstrate that there is a palpable defect in the opinion or order under attack and that correcting the defect will result in a different disposition of

the case. *Id.*; *Indah v. U.S. S.E.C.*, 661 F.3d 914, 924 (6th Cir. 2011). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Hawkins v. Genesys Health Systems*, 704 F. Supp. 2d 688, 709 (E.D. Mich. 2010) (quoting *Ososki v. St. Paul Surplus Lines Ins. Co.*, 162 F. Supp. 2d 714, 718 (E.D. Mich. 2001)).

## IV. DISCUSSION

Defendants originally moved to defer on the grounds that the matter should be sent to arbitration in China pursuant to a "Joint Venture Agreement" between FEIC and Huatong. *See* Dkt. No. 79. Although none of the parties to the present litigation were signatories to the Joint Venture Agreement, Defendants argue that the parties are bound by the agreement "by ordinary contract and agency principles." *Id.* at 16 (Pg. ID No. 1341) (quoting *Shammami v. Broad Street Securities, Inc.*, 544 F. Supp. 2d 585, 586–87 (E.D. Mich. 2008)). This Court has already stated that it found the applicability of the Joint Venture Agreement to be dubious but did not believe it necessary to rule on those merits. Dkt. No. 97 at 3 (Pg. ID No. 1834). However, the Court shall take this opportunity to set the record straight.

### A. The Purported Joint Venture Agreement

There are four factors, identified by the Sixth Circuit, that the Court should consider when addressing a motion to compel arbitration: (1) Whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; (4) if some, but not all, of the claims in the action are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005).

As stated above, Defendants concede that none of the parties to the action are signatories to the purported Joint Venture Agreement. Dkt. No. 79 at 16 (Pg. ID No. 1341). Defendants

argue that Plaintiff "does not have to personally sign an agreement to be bound, but may stand in the shoes of the entity that signed the agreement." *Id.* (citing *Kruse v. AFLAC Intern, Inc.*, 458 F. Supp. 2d 375, 382–83 (E.D. Ken. 2006)).

Defendants are partially correct. A nonsignatory of an arbitration agreement may be bound by the agreement under ordinary contract and agency principles. *Arnold v. Arnold Corp.- Printed Communications for Business*, 920 F.2d 1269, 1281–82 (6th Cir. 1990) (citing *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)). Furthermore, there are "[f]ive theories for binding nonsignatories to arbitration agreements [that] have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). However, the Defendants have not demonstrated that any of the five theories apply.

    *a. Agency*

In *Arnold*, the Plaintiff brought suit against individual Defendants. However, the Defendants were agents of a party who had agreed to an arbitration agreement with Plaintiff. *Id.* at 1271. The Sixth Circuit further found that the Defendants were alleged "to have committed acts related to their running of the corporation." *Id.* at 1282. "[T]hese alleged wrongful acts relate to the nonsignatory defendants' behavior as officers and directors or in their capacities as agents of the Arnold Corporation." *Id.* Thus, the Court held that the Defendants were entitled to the benefits of the arbitration agreement.

Defendants principally have argued that the same agency theory applies in the instant matter. Here however, both the Defendants and the Plaintiff are nonsignatories. Defendants offer no authority that a nonsignatory Defendant may invoke an arbitration agreement to a nonsignatory Plaintiff. *See Reilly v. Meffe*, 6 F. Supp. 3d 760, 778 (S.D. Ohio 2014).

Furthermore, just because Plaintiff is a sister-company to FEIC and SFC, that does not mean that Plaintiff is their agent that may be bound to an agreement that Plaintiff did not sign. Even under the assumption that Defendants were acting within their capacities as agents of Huatong, the same agency relationship does not exist between American Furukawa and its sister companies. *See* Dkt. No. 89 (Exhibit 1, ¶ 5); *see also National Carbide v. C.I.R.*, 366 U.S. 422, 437 (1949) ("Whether the corporation operates in the name and for the account of the principal, binds the principal, by its actions, transmits money received to the principal, and whether receipt of income is attributable to the services of employees of the principal and to assets belonging to the principal are some of the relevant considerations in determining whether a true agency exists.").

Moreover, Defendants have not alleged facts, nor argued, that FEIC and SFC are corporate fronts for the parent company, Furukawa Electric Group. Thus, there is no way to connect American Furukawa to the Joint Venture Agreement through agency principles.

  b.  *Alter Ego*

Defendants also hint that American Furukawa is merely an alter ego for FEIC. Dkt. No. 79 at 17–18 (Pg. ID No. 1342–43). "The alter ego doctrine is an equitable doctrine 'developed to prevent employers from evading obligations under the [National Labor Relations] Act merely by changing or altering their corporate form." *Trustees of Detroit Carpenters Fringe Benefit Funds v. Industrial Contract, LLC*, 581 F.3d 313, 318 (6th Cir. 2009). When determining whether two companies are alter egos, "[w]e look to see 'whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership.' " *Id.* (quoting *NLRB v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 (6th Cir. 1990)). "In applying these factors, no individual factor is outcome determinative;

-5-

instead, 'all the relevant factors must be considered together.' " *Id.* (quoting *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 582 (6th Cir. 1986)).

On Defendants' list of facts purporting to demonstrate that FEIC and American Furukawa are "closely intertwined companies," Dkt. No. 79 at 17–18 (Pg. ID No. 1342–43), Defendants merely demonstrate that American Furukawa and FEIC are subsidiaries of Furukawa Electric Group. Defendants have not demonstrated that American Furukawa and FEIC have identical management, equipment, operation, customers, and supervision.

Instead there is evidence to the contrary. *See* Dkt. No. 89 (Exhibit 1, ¶¶ 5–7). American Furukawa and FEIC are located on opposite sides of the planet. *Id.* The two companies have different primary product lines. *Id.* The two companies have completely different management teams. *Id.* The two companies have completely different Boards of Directors. *Id.* The two companies have different customer bases. *Id.* There is very little to suggest that one is the alter ego of the other.

### c.  The Demand Letter

Finally, Defendants argue that Plaintiff "acknowledged that it stood in FEIC's shoes in its demand letter to Defendant Hossain on June 9, 2014." Dkt. No. 79 at 19 (Pg. ID No. 1344). The Demand letter read, in relevant part, as follows:

> In addition to the foregoing, Furukawa has a joint venture agreement with Huatong, whereby Huatong has acquired know-how and trade secrets directly from Furukawa. By selling Huatong cables, which include Furukawa know-how and trade secrets, you may be liable, as a co-conspirator for violation of the joint venture agreement.

*Id.* (Exhibit L: Demand Letter). Plaintiff argues that the joint venture agreement referenced in the demand letter is not the same agreement brought in Defendants' Motion. Dkt. No. 89 at 16 (Pg. ID No. 1707).

The Court is not persuaded by Defendants' argument. Pointing to a particular correspondence between the Plaintiff and Defendant Hossain referencing a generic "joint venture agreement" does not mean that the Plaintiff agreed to be bound to, what could be, a completely different joint venture agreement that Defendants may have found elsewhere. To say that these particular pieces of paper constitute the joint venture agreement referenced in a demand letter from last year is at best a speculative conclusion.

Therefore, the Court finds that Defendants have failed to demonstrate that American Furukawa agreed to arbitrate the matter at hand. Thus, the Defendants have failed to point to a defect that if corrected would result in a different disposition of the case. Accordingly, the Motion for Reconsideration fails.

### V. CONCLUSION

For the reasons discussed above, the Defendants' Motion for Reconsideration [103] is **DENIED.**

IT IS SO ORDERED.

Dated:  December 30, 2015                  s/Gershwin A. Drain
        Detroit, Michigan                  GERSHWIN A. DRAIN
                                           United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on **December 30, 2015.**

                                           s/Tanya R. Bankston
                                           TANYA R.BANKSTON
                                           Case Manager & Deputy Clerk