UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A<small>MERICAN</small> F<small>URUKAWA</small>, I<small>NC</small>.,

          Plaintiff,

v.

I<small>STHIHAR</small> H<small>OSSAIN AND</small> HT W<small>IRE</small> &
C<small>ABLE</small> A<small>MERICAS</small>, LLC,

          Defendants.

Case No. 14-cv-13633

U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>
S<small>TEPHANIE</small> D<small>AWKINS</small> D<small>AVIS</small>

### O<small>PINION AND</small> O<small>RDER</small> G<small>RANTING IN</small> P<small>ART AND</small> D<small>ENYING IN</small> P<small>ART</small> P<small>LAINTIFF</small>'<small>S</small> M<small>OTIONS IN</small> L<small>IMINE</small> [142, 158]

### I. I<small>NTRODUCTION AND</small> P<small>ROCEDURAL</small> B<small>ACKGROUND</small>

On September 19, 2014, American Furukawa, Inc. ("Furukawa" or "Plaintiff"), filed this action against former employee, Isthihar Hossain ("Defendant Hossain" or "Hossain"). *See* Dkt. No. 1. On September 16, 2015, Furukawa amended the Complaint to add another Defendant, HT Wire & Cable America, LLC ("HT Wire"). *See* Dkt. No. 65. In the Complaint, Furukawa alleges eight Counts: (I) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (II) Fraud; (III) Breach of Contract; (IV) Breach of Fiduciary Duty; (V) Misappropriation of Trade Secrets under M<small>ICH</small>. C<small>OMP</small>. L<small>AWS</small> § 445.1902; (VI) Conversion; (VII) Tortious Interference; and (VIII) Civil Conspiracy. *See* Dkt. No.

1. Hossain and HT Wire (collectively, "Defendants") moved to dismiss the action and defer to arbitration. *See* Dkt. No. 79. The Court denied that Motion on November 19, 2015. *See* Dkt. No. 97. On April 19, 2016, Plaintiff and Defendants moved for Summary Judgement. *See* Dkt. No. 117, 119. The Court granted Summary Judgment to the Defendants with respect to Count VI. The Court denied Summary Judgment to both sides with respect to Counts I-V, VII, and VIII. *See* Dkt. No. 138.

Parties stipulated to waive their right to a jury trial. *See* Dkt. No. 144. A bench trial is set for November 11, 2016. Presently before the Court are Plaintiff's Motions in Limine [142] and Plaintiff's Supplemental Motions in Limine [158].

## II. FACTUAL BACKGROUND

Furukawa is a supplier of advanced automotive technology, electronics and specialty products. Isthihar Hossain accepted employment with Furukawa in September, 2011 as a Power Systems Electrical Engineer.

When Hossain began his employment with Furukawa, Furukawa asserts that Hossain agreed to abide by several of Furukawa's Policies, including Furukawa's policy on "Removable Media Use." Furukawa also asserts that Hossain entered into an Invention Assignment & Secrecy Agreement ("Secrecy Agreement") with Furukawa, which dictated that Hossain "will regard and preserve as confidential all trade secrets pertaining to the Company's business that have been or may be obtained by me by reason of my employment." The Secrecy Agreement also dictated that

-2-

Hossain would not "without prior authority from the company to do so, use for [his] own benefit or purposes, nor disclose to others, either during [his] employment or thereafter" any trade secrets pertaining to Furukawa's business.

By 2014, Hossain became a Senior Production Manager. Hossain's position gave him access to Furukawa's intellectual property and other confidential information. On March 11, 2014, while he was still employed by Furukawa, Furukawa asserts that Hossain entered into an "Employment Agreement" with Heibei Huatong Wires & Cables Group Co., Ltd. ("Huatong")—a competitor and supplier to Furukawa.

On March 17, 2014, Hossain informed Furukawa he was unable to work due to a basketball injury. Notably, pursuant to his alleged Agreement with Huatong, Hossain was scheduled to begin his employment with Huatong on March 17, 2014. As a result of his reported injury, Hossain was granted a leave of absence, commencing March 18, 2014. As a condition for granting leave, Furukawa asserts that it instructed Hossain that he could not do any work for Furukawa while he was away. Despite the instructions to the contrary, Furukawa asserts that Hossain accessed information on his company laptop, copied Furukawa files, and sent them from his company email to his personal "gmail" account during his leave of absence.

On March 20, 2014, Huatong announced that it would no longer sell Electrical Submersible Pump ("ESP") cables and photovoltaic ("PV") cables (collectively, the "Cables") to the United States market, through Furukawa.

On April 24, 2014, Hossain sent an email to Furukawa's Manager of Human Resources stating that his doctor had cleared him to return to work. On Monday, April 28, 2014, Hossain announced that he was resigning his employment, effective May 2, 2014. Furukawa accepted Hossain's resignation, effective April 29, 2014, and paid him through May 2, 2014.

Despite his alleged Agreement with Huatong, when Hossain resigned, he allegedly indicated that he did not "have another job lined up or anything," but his "previous employer" had been contacting him, and he was "pretty sure" that he could get a job with them. Upon his departure from Furukawa, Hossain was asked to sign an "Employee Certification & Agreement on Termination," certifying that he had returned all property belonging to the Company, had complied with the Secrecy Agreement and would continue to abide by that Agreement. Hossain allegedly refused to sign.

On or about May 12, 2014, Furukawa learned that Huatong had approached WTEC—one of Furukawa's customers—about buying cable from Huatong. On May 16, 2014, Furukawa received an email from WTEC regarding WTEC's "compound" requirements and "payment terms." The email from WTEC was addressed to

Hossain at his former Furukawa email address. On May 30, 2014, WTEC confirmed that Hossain was acting as Huatong's agent with respect to the sales negotiations between WTEC and Huatong. On June 5, 2014, Furukawa received another email from WTEC, addressed to Hossain's Furukawa email address, purportedly asking Hossain to quote the price for several sets of cables.

Furukawa sent a letter to Hossain on June 9, 2014, reminding him of his obligations under the Secrecy Agreement. In the letter, Furukawa demanded that Hossain immediately cease and desist from any further solicitation of cable business from WTEC or any other customer of Furukawa. Furukawa also sought assurances that Hossain would abide by his trade secret obligations, and would not use or disclose any trade secret information that he acquired during his employment with Furukawa. Hossain purportedly refused to comply with this request. Furukawa attempted to negotiate with Hossain to resolve the dispute. Throughout the negotiations, Hossain purportedly maintained that he had returned all property belonging to Furukawa and fully complied with the Secrecy Agreement. After looking into the actions of Hossain, Furukawa brought the instant action pursuant to the CFAA and Michigan law.

### III. D<small>ISCUSSION</small>

Pursuant to Rules 401, 402, 403, and 404 of the Federal Rules of Evidence, Plaintiff moves to exclude evidence and argument relating to the following:

1. A Joint Venture Agreement between Plaintiff's sister corporations and Defendant's parent corporation;
2. Prior litigation against the Plaintiff;
3. Prior litigation against Plaintiff's parent corporation;
4. An alleged corporate directive to eliminate Huatong as a supplier to Plaintiff's parent corporation
5. Alleged mistreatment of employees including Hossain by Plaintiff's general manager, Shuichi Takagi; and
6. Alleged derogatory comments by an employee of Plaintiff's parent corporation, Hiroyuki Otake.

Additionally, Plaintiff's seek to exclude the testimony of Defendants' Expert Witness, Mr. Patrick Gregory.

Evidence is relevant if "it has any tendency to make a fact more or less probable" and that "fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible unless a federal law or another rule of evidence precludes its admissibility. Fed. R. Evid. 402. Rule 403 excludes "relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

At the outset, the Court notes that much of the Plaintiff's argument relies on the risk of unfair prejudice and misleading the jury. However, this matter is set for a bench trial, not a jury trial. "In bench trials, the application of the unfair prejudice portion of Rule 403 has been seen as an unnecessary and "useless procedure.". *United States v. Hall*, 202 F.3d 270 (6th Cir. 2000) (citing 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5213 (1978 & Supp

1999); *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994); *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 517 (5th Cir. 1981)). Therefore, because parties waived their right to trial by jury and the Court must decide whether to exclude evidence under Rule 403 – exclusion of evidence based on prejudice or misleading the jury is unnecessary.

A. *The Joint Venture Agreement*

Plaintiff asks the Court to exclude evidence regarding a 2010 joint venture agreement ("JVA"). None of the parties in the current litigation were parties to that agreement. The JVA was between Furukawa Electric Industrial Co. Ltd. (FEIC), Shenyang Furukawa Cable Co. Ltd. (SFC) and Huatong. Huatong is HT Wire's parent company. *See* Dkt. No. 147 at 12 (Pg. ID 3724). FEIC and SFC are owned by the same parent company (Furukawa Electric Group, or "FEC") as the Plaintiff. Although Furukawa, FEIC and SFC are different companies with different management teams, different directors and different customers, the three companies appear closely related. Dkt. No. 142 at 20–21 (Pg. ID 3594–95). For example, FEIC's website provides Furukawa's contact information as if the two corporations are synonymous.[1]

Plaintiff argues that the JVA is not relevant because no claim in this case touches the agreement. Plaintiff further argues that evidence of the agreement would

---

[1] *See* http://www.feic.co.jp/english/contact.htm.

distract and confuse the (non-existent) jury. Evidence is relevant if it makes a consequential fact more or less probable. Fed. R. Evid. 401. Relevance must be "determined in the context of the facts and arguments in a particular case." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008). Although the JVA does not involve the exact parties to this dispute, it is nevertheless relevant to establish Hossain and HT Wire's defense. Plaintiff alleges that Hossain stole trade secrets and confidential information. On the other hand, Defendants argue that no trade secrets were taken because the information was 'generally known' to HT Wire through the JVA with HT Wire's parent company. Dkt. No. 147 at 13 (Pg. ID 3725). Because the JVA makes that defense more probable, the agreement is relevant.

Plaintiff's concern for the jury is misplaced because this is a bench trial. Additionally, the Court is not persuaded that evidence about a single agreement will unnecessarily prolong the trial. Thus, evidence of the joint venture agreement is permissible at trial.

### B. Prior Litigation against the Plaintiff and Plaintiff's Parent Company

Next, Plaintiff requests to exclude evidence of prior lawsuits. Those lawsuits involve antitrust violations, violations of the False Claims Act, and a breach of contract claim. *See* Dkt. No. 142 at 19 (Pg. ID 3593). Defendants argue that there is evidence of over fifty federal court lawsuits which cast doubt on the Plaintiff's trustworthiness and the credibility of Plaintiff's witnesses. *See* Dkt. No. 147 at 15

(Pg. ID 3727). Accordingly, Defendants reason that the lawsuits "give an explanation as to why Plaintiff may have lost business." *Id.* The Defendants' arguments are unpersuasive.

This is tort case alleging the misappropriation confidential business information. Defendants' strongest argument is that the lawsuits demonstrate that the Plaintiff is untrustworthy, and that poor reputation, not the Defendants, caused the Plaintiff's damages. Although damages are consequential to this litigation, the causal link between prior lawsuits, perceived trustworthiness, and loss of business is tenuous. Even if the lawsuits were relevant, the undue delay caused by discussing fifty, unrelated lawsuits substantially outweighs their minimal probative value. Therefore, evidence of prior lawsuits will be excluded.

*C. Corporate Directive to Eliminate Huatong as a Supplier*

Plaintiff seeks to exclude an email regarding FEC's (Furukawa's parent Corporation) future business considerations. *See* Dkt. No. 142 at 22 (Pg. ID 3596). The email mistakenly reveals to Huatong that FEC is considering getting "CV" cables from other companies. *See* Dkt. No. 147-7. Plaintiff argues that the email is not relevant because it: (1) involves the business plans of a "completely distinct entity", from three years prior; (2) involves unrelated products; and (3) has no bearing on any issues. The Defendants argue that the information is relevant because it demonstrates that the inadvertent email exposed confidential information, rather

than Hossain. The Court finds the evidence relevant. Plaintiff correctly notes that the email was sent by Plaintiff's parent company, not the Plaintiff. Nevertheless, the leaked email makes Hossain's defense (that he did not reveal confidential information, and the information was generally known) more probable.

Additionally, Plaintiff argues that the email is inadmissible because it would mislead the jury. Again, in this case, there is no jury. Therefore Plaintiff's concerns, and the cases that it relies upon, are not applicable.

### D. Alleged Mistreatment of Employees by Shuichi Takagi

While Hossain worked at Furukawa, Shuichi Takagi was his supervisor. Hossain alleges that Mr. Takagi was abusive and mistreated him. *See* Dkt. No. 147 at 20 (Pg. ID 3732). According to Hossain, mistreatment by Mr. Takagi was part of the reason he resigned. Plaintiff argues that evidence of mistreatment is not relevant. The Court disagrees. Hossain's motive for leaving Furukawa is consequential to his alleged fraud. Because evidence of mistreatment makes Hossain reason for leaving Furukawa more probable, it is relevant.

Additionally, Plaintiff argues that the evidence "will encourage the jury to decide the case based on an assessment of Mr. Tagaki as a bad person." *See* Dkt. No. 142 at 25 (Pg. ID 3599). Again, this is a bench trial; the Court is capable to analyze the evidence without mischaracterizing Mr. Tagaki.

### E. *Alleged Derogatory Statements Made by Hiroyuki Otake*

Hiroyuki Otake is an executive at FEC (Furukawa's parent company). Hossain testified in his deposition that Otake made offensive comments about the Chinese during a meeting with one of the Plaintiff's customers. *See* Dkt. No. 142 at 26 (Pg. ID 3600); Dkt. No. 147 at 21 (Pg. ID 3733). Defendants argue that the comments are relevant to why customers bought from HT Wire, rather than the Plaintiff. Loss of business speaks to a consequential issue in this case, the damages. Further, these alleged comments, made in the presence of a customer, make it more probable that the customer left for reasons unrelated to fraudulent business practices. Therefore, the alleged comments are relevant.

Plaintiff then argues the comments would be highly prejudicial. However, because the application of the unfair prejudice portion of Rule 403 is not useful in bench trials, Plaintiff's Rule 403 attack on the alleged comments fails. *See United States v. Hall*, 202 F.3d 270 (6th Cir. 2000). Thus, evidence of the allegedly derogatory comments is permissible.

### F. *Defendants' Expert Witness*

Plaintiff argues that Defendants' Expert Witness, Patrick Gregory, should not be allowed to testify because he was not timely disclosed. *See* Dkt. No. 142 at 27 (Pg. ID 3601). On the other hand, Defendants argue that Mr. Gregory was timely identified as a rebuttal witness.

-11-

Federal Rule of Civil Procedure 26 requires rebuttal disclosures within 30 days of the other party's expert disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In this case, Plaintiff made its expert disclosures on June 10, 2016. *See* Dkt. No. 142 at 28 (Pg. ID 3602). To comply with Rule 26, the Defendants should have disclosed their expert and his report by July 11, 2016. Defendants failed to meet their Rule 26 deadline because the Defendants did not submit its expert witness report until September 28, 2016. *See* Dkt. No. 158-4 at 2 (Pg. ID 4040). Nevertheless, Defendants' violation of Rule 26 seems harmless.

The Defendants informed the Plaintiff that Mr. Gregory would be a witness on February 23, 2016. *See* Dkt. No. 109 at 5 (Pg. ID 2084). Although Mr. Gregory's report was not provided until late September, the Plaintiff was aware of Mr. Gregory's resume and credentials in July of 2016. *See* Dkt. No. 142 at 27 (Pg. ID

3601). Furthermore, the Plaintiff was able to depose Mr. Gregory not just once, but twice. Dkt. No. 158 at 6 (Pg. ID 4002). Thus, because the Plaintiff had knowledge of the undisclosed information and two opportunities to depose the expert witness, the Rule 26 violation is harmless. *See Baker Hughes Inc. v. S&S Chem., LLC*, No. 15-2413, 2016 WL 4578355, at *11 (6th Cir. Sept. 2, 2016) (citing *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015)) ("noting that a violation of Rule 26 is likely to be harmless when the opposing party already has "sufficient knowledge" of the undisclosed information").

## IV. CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motions in Limine [142, 158]. The Court will **permit evidence** concerning: (1) the Joint Venture Agreement between Plaintiff's sister companies and Huatong; (2) Plaintiff's intention to eliminate Huatong as a supplier; (3) mistreatment by Shuichi Takagi; and (4) offensive comments by Hiroyuli Otake. The Court will **exclude**: (1) evidence of prior litigation against the Plaintiff; and (2) evidence of prior litigation against the Plaintiff's parent company.

**SO ORDERED.**

Dated: October 26, 2016

Detroit, MI

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

-14-

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 26, 2016, by electronic and/or ordinary mail.

/s/Tanya Bankston
Case Manager, (313) 234-5213